1 | TIMOTHY L. REED, CA Bar No. 258034
timothy.reed@ogletree.com
2 | MARC A. KOONIN, CA Bar No. 166210
marc.koonin@ogletree.com
3 | KHADIJAH KENYATTÉ, CA Bar No. 337236
khadijah.kenyatte@ogletree.com
4 | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
5 | San Francisco, CA  94111
Telephone:     415-442-4810
6 | Facsimile:     415-442-4870

7 | Attorneys for Defendant
LYFT, INC.

8

9

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| JORDAN MATTHEW PAULEY, | Case No. 4:25-cv-10252-HSG |
|---|---|
| Plaintiff, | **JOINT STIPULATION TO REMAND CASE TO STATE COURT, AND AMEND COMPLAINT FOLLOWING REMAND; AND ORDER (as modified)** |
| vs. | |
| LYFT, INC., | Action Filed:    October 27, 2025 |
| Defendant. | Trial Date:      None Set<br>Judge:           Hon. Haywood S. Gilliam, Jr. |

<b><u>JOINT STIPULATION</u></b>

Plaintiff Jordan Matthew Pauley ("Plaintiff") and defendant Lyft, Inc. ("Defendant") (collectively, the "Parties"), by and through their respective counsel, hereby agree and stipulate as follows:

**WHEREAS**, on October 27, 2025, Plaintiff filed a Complaint in Alameda County Superior Court styled *Jordan Matthew Pauley v. Lyft, Inc.*, Case No. 25CV150665 (the "Complaint") alleging that Defendant violated certain laws, including certain federal laws relating to the use of criminal background checks and that Defendant discriminated against Plaintiff as a job applicant;

**WHEREAS**, Plaintiff served the Summons and Complaint on Defendant, through its California agent for service of process, on October 29, 2025;

**WHEREAS**, on November 26, 2025, Defendant removed the action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. sections 1331 and 1441;

**WHEREAS**, on December 1, 2025, Plaintiff filed a Motion to Amend the Complaint to remove claims alleged under federal law and asking the Court to remand this Action to the Alameda County Superior Court, along with a proposed First Amended Complaint; and

**WHEREAS**, the Parties agree that, once the Complaint is amended to dismiss all federal claims, there will no longer be any basis for federal jurisdiction in this Action.

**THEREFORE, THE PARTIES AGREE AND STIPULATE AS FOLLOWS:**

1.     This action shall be remanded to Alameda County Superior Court, with each side to bear its own attorney's fees and costs.

2.     Upon remand to state court, Plaintiff will file the First Amended Complaint attached hereto as Exhibit A.

1  DATED:  December 15, 2025                    OGLETREE, DEAKINS, NASH, SMOAK &
2                                               STEWART, P.C.

3

4                                               By: /s/ Timothy L. Reed
5                                                   TIMOTHY L. REED
                                                    MARC A. KOONIN
6                                                   KHADIJAH KENYATTÉ

7                                               Attorneys for Defendant
                                                LYFT, INC.
8

9  DATED: December 15, 2025

10

11                                              By: /s/ Jordan Matthew Pauley
12                                                  JORDAN MATTHEW PAULEY

13                                              Plaintiff in Pro Per

14                      **SIGNATURE ATTESTATION**

15       Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

16  document has been obtained from the other signatories.

17

18  DATED: December 15, 2025            By:  /s/ Timothy L. Reed
19                                           OGLETREE, DEAKINS, NASH, SMOAK
                                             & STEWART, P.C.
20

21

22

23

24

25

26

27

28

JOINT STIPULATION TO REMAND CASE TO STATE COURT AND AMEND
COMPLAINT FOLLOWING REMAND; AND ORDER

1

## <u>ORDER</u>

2      This Court, having read and considered the stipulation between plaintiff Jordan Matthew

3   Pauley ("Plaintiff") and defendant Lyft, Inc.'s ("Defendant") regarding remand to state court and

4   the filing of an amended complaint by Plaintiff, and based on good cause appearing therefrom, the

5   Court **HEREBY ORDERS**:

6      1.      This action is remanded to Alameda County Superior Court, with each side to bear its

7   own attorney's fees and costs.  The Clerk is directed to close the case.

8      2.      Upon remand to state court, Plaintiff will file the First Amended Complaint attached

9   hereto as Exhibit A.

10

11      **IT IS SO ORDERED.**

12

13   Dated:   12/15/2025

14                                     _____
                                       Hon. Haywood S. Gilliam, Jr.

15                                     United States District Court Judge

16                                                         94346482.v1-OGLETREE

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION TO REMAND CASE TO STATE COURT AND AMEND
COMPLAINT FOLLOWING REMAND; AND ORDER

# EXHIBIT A

JORDAN MATTHEW PAULEY, PRO PER
24438 SANTA CLARA ST UNIT 6052
HAYWARD, CA 94540
P: (510) 813-7054
E: JM.PAUL731@GMAIL.COM

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

| | |
|---|---|
| JORDAN MATTHEW PAULEY,<br><br>Plaintiff,<br><br>vs.<br><br>LYFT, INC.; AND DOES 1-10, INCLUSIVE,<br><br>Defendant(s). | Case No. 25CV150665<br><br>**Unlimited Jurisdiction**<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, DAMAGES, AND PENALTIES FOR VIOLATIONS OF (1) CALIFORNIA LABOR CODE § 432.7, (2) CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT (ICRAA), (3) CALIFORNIA UNFAIR COMPETITION LAW (UCL), (4) INVASION OF PRIVACY, AND (5) GROSS NEGLIGENCE**<br><br>**(DEMAND FOR JURY TRIAL)**<br><br>Action Filed: October 27th, 2025<br>Amended: December 1st, 2025 |

PLAINTIFF Jordan Matthew Pauley alleges as follows:

**THE PARTIES TO THIS ACTION**

1. PLAINTIFF Jordan Matthew Pauley ("PLAINTIFF") is, and at all relevant times herein, was a resident of Hayward, California. Until approximately March 2024, PLAINTIFF was actively engaged in the rideshare profession, having successfully completed more than 5,600 passenger trips and/or deliveries since 2019, maintaining an exceptional driver rating of 4.98 out of 5 on the Uber Driver platform.

2. Providing rideshare and delivery services as both a *"Delivery Network Company*

*Courier"* and a *"Transportation Network Company Driver,"* as those terms are defined under the Protect App-Based Drivers and Services Act, CA Bus. & Prof. Code § 7463[1], has constituted a substantial and integral part of PLAINTIFF's overall financial livelihood and long-term professional strategy. Notwithstanding, in addition to app-based driving, PLAINTIFF has long pursued regular employment opportunities with both government entities and major technology companies like LYFT. PLAINTIFF is currently a 40+ year old African-American person, and a professional Data Analyst by trade.

3.   At all times relevant herein, PLAINTIFF was an *"applicant"* – meaning an applicant for employment as defined under CA Labor Code § 430[2], who applied for regular employment with LYFT in December of 2023.

4.   PLAINTIFF is also a 100% disabled United States ARMY veteran, having served honorably in the 82nd Airborne Division during the Global War on Terror. PLAINTIFF's race, age, and veteran status place him squarely within classes protected by the California Fair Employment and Housing Act[3][4], Title VII of the Civil Rights Act of 1964[5], and the Age Discrimination in Employment Act of 1967[6].

5.   At all times relevant herein, PLAINTIFF was also a recipient of relief under CA Penal Code § 1203.4[7], resulting in the expungement of all prior convictions and thereby placing him within the protections afforded by the California Fair Chance Act[8][9], CA Labor Code § 432.7[10], and other contextually relevant statutes.

---

[1] https://codes.findlaw.com/ca/business-and-professions-code/bpc-sect-7463/
[2] https://codes.findlaw.com/ca/labor-code/lab-sect-430
[3] https://codes.findlaw.com/ca/government-code/gov-sect-12900/
[4] https://codes.findlaw.com/ca/government-code/gov-sect-12952/
[5] https://www.eeoc.gov/statutes/title-vii-civil-rights-act-1964
[6] https://www.eeoc.gov/statutes/age-discrimination-employment-act-1967
[7] https://codes.findlaw.com/ca/penal-code/pen-sect-1203-4/
[8] https://calcivilrights.ca.gov/fair-chance-act/
[9] https://www.law.cornell.edu/regulations/california/2-CCR-11017.1
[10] https://codes.findlaw.com/ca/labor-code/lab-sect-432-7.html/

6.  At all times relevant herein, Defendant LYFT, Inc. ("LYFT" or "DEFENDANT") was and is a Delaware corporation registered with the California Secretary of State. LYFT operates a transportation and delivery network platform through which it contracts drivers to provide rideshare and delivery services to consumers. In addition to its network operations, LYFT employs thousands of individuals across its corporate departments, including but not limited to accounting and finance, data analytics and business intelligence, data science, human resources, legal, operations, and software engineering.

7.  LYFT qualifies as both a *"Transportation Network Company"* and *"Delivery Network Company"*—collectively, a *"Network Company"*—as those terms are defined under the Protect App-Based Drivers and Services Act, Bus. & Prof. Code § 7463. In addition to its network operations, LYFT's extensive corporate structure and workforce also render it an *"employer"* within the meaning of California Labor Code provisions, Government Code § 12926(d)[11][12], 29 U.S.C. § 630(b)[13], and Section 701(b) of Title VII of the Civil Rights Act of 1964/42 U.S.C. § 2000e(b)[14], and other analogous state and federal employment statutes.

8.  Lyft's principal place of business is located at 185 Berry St Suite 400, San Francisco, CA 94107.

## JURISDICTION

9.  The Superior Court of the State of California has original jurisdiction over this action pursuant to (1) the California Constitution, Article VI, Section 10[15] – as this case involves causes of action arising under California law, and (2) because DEFENDANT conducts business in and across the State of California.

---

[11] https://codes.findlaw.com/ca/government-code/gov-sect-12926/
[12] https://codes.findlaw.com/ca/government-code/gov-sect-12940/
[13] https://www.law.cornell.edu/uscode/text/29/630
[14] https://www.law.cornell.edu/uscode/text/42/2000e
[15] https://codes.findlaw.com/ca/constitution-of-the-state-of-california-1879/ca-const-art-vi-sect-10/

## VENUE

10. Venue is proper in the Superior Court of the State of California, County of Alameda, under Cal. Code Civ. Proc. § 395.5[16], as the liability at issue arose in this county.

## I.    FACTUAL ALLEGATIONS

**a.  Background**

   ***i.    General***

11. On or around December 18th, 2023, PLAINTIFF submitted a Data Analyst employment application through LYFT's careers portal. LYFT issued an acknowledgment stating that it receives a high volume of applications and would only follow up if there were an immediate fit for the role.

12. At that time, LYFT's careers page expressly represented that:

> "Lyft is an equal opportunity employer committed to an inclusive workplace that fosters belonging. All qualified applicants will receive consideration for employment without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, disability status, protected veteran status, age, genetic information, or any other basis prohibited by law. We also consider qualified applicants with criminal histories consistent with applicable federal, state, and local law."

This public representation formed part of the factual and legal context in which PLAINTIFF's application was submitted and later evaluated.

13. Separately, on or around March 8th, 2024, PLAINTIFF applied to drive on the LYFT platform. LYFT engaged non-party Checkr, Inc. ("CHECKR") to furnish a background report for the driver application. As part of the process, PLAINTIFF consented to the procurement of this

---

[16] https://codes.findlaw.com/ca/code-of-civil-procedure/ccp-sect-395-5/

background check report. Nevertheless, the CHECKR background check report contained expunged/sealed criminal history. Upon notice of these findings from LYFT, PLAINTIFF promptly disputed the report with CHECKR – to which CHECKR, in turn, sent notice to LYFT of the dispute. LYFT then placed PLAINTIFF's driver application on hold pending CHECKR's reinvestigation.

14. During the reinvestigation period of the driver issue, and notwithstanding LYFT's prior representation regarding PLAINTIFF's Data Analyst application – that it "would only be reaching out to candidates who are an immediate fit for the role," LYFT unexpectedly issued a tailored rejection notice regarding the Data Analyst employment application. This rejection letter made no reference to any background-check results or adjudicative criteria. However, the very next day, LYFT issued a separate notice rejecting PLAINTIFF's driver application based explicitly on the expunged information contained in the CHECKR background report.

15. Based on information and belief, and the temporal proximity of adverse actions described herein, PLAINTIFF alleges that LYFT unlawfully accessed, cross-referenced, and used the same expunged criminal history—originally transmitted by CHECKR solely for purposes of the driver screening process—to inform and effectuate its decision to reject PLAINTIFF's Data Analyst application. Such cross-use of protected background information, obtained for a distinct and limited purpose without PLAINTIFF's authorization, constitutes a willful violation of CA Labor Code § 432.7 and other applicable consumer-protection and anti-discrimination laws.

16. PLAINTIFF further alleges that LYFT's decision to unlawfully cross-reference his background-check information, to rely upon that protected data in making an adverse employment decision regarding his Data Analyst application, and to conceal such conduct by issuing a customized rejection notice, was authorized, directed, or subsequently ratified by one or more managing agents of the company. The individuals involved—including senior personnel

within LYFT's Talent Acquisition and Legal or Compliance departments—possessed discretionary authority over employment policy and applicant evaluation procedures, thereby rendering their actions and ratifications those of LYFT itself for purposes of liability and punitive damages.

17. The rejection email regarding PLAINTIFF's Data Analyst application was sent by Senior Talent Acquisition Partner/Technical Recruiter Alina Cebotarenco (Person Most Knowledgeable[17]; "FW 1"), who, upon information and belief, acted within the course and scope of her employment with LYFT. As a senior recruiter responsible for managing corporate-level technical hiring, Ms. Cebotarenco possessed discretion and authority over candidate evaluation, communication of hiring decisions, and implementation of LYFT's recruitment policies. Her issuance of the customized rejection notice therefore constitutes corporate conduct attributable to LYFT, and her actions and knowledge are relevant to determining the company's authorization, participation in, or ratification of the unlawful cross-referencing described herein.

18. Based on information and belief, LYFT's driver-operations division is departmentally firewalled from its Corporate and Technical Recruiting teams, each maintaining separate reporting structures, data systems, and decision-making protocols. The temporal proximity of the events described herein—particularly LYFT's sudden and renewed interest in PLAINTIFF's Data Analyst application, occurring only after the driver-side background-check issue arose—suggest that FW 1 was prompted interdepartmentally to act. Such coordination, if proven, would demonstrate the likely involvement of multiple managing agents or supervisory personnel operating across divisions, collectively ratifying or executing the decision to reject PLAINTIFF's Data Analyst application on the basis of expunged criminal-history information. This

---

[17] https://codes.findlaw.com/ca/code-of-civil-procedure/ccp-sect-2025-230/

interdepartmental prompting and/or coordination would further evidence a deliberate policy-level response, rather than an isolated error.

### ii. Related Cases

19. On March 18th, 2025, this Court compelled arbitration in Pauley v. Checkr Group, Inc., et al. (Alameda Sup. Ct. No. 24CV089648), which included LYFT among the defendants. The LYFT portion of those proceedings are presently pending before the American Arbitration Association ("AAA"). That arbitration case concerns claims arising from LYFT's rejection of PLAINTIFF's app-based driver application based on reasons statutorily barred.

20. The present civil action by PLAINTIFF concerns his separate application for employment with LYFT as a corporate Data Analyst, and the Company's subsequent rejection of that application. These claims are both factually and contractually independent from the driver-related matters currently pending in arbitration against LYFT. The employment application here was not subject to the arbitration agreement governing the earlier driver disputes, nor are the legal theories (employment discrimination, unauthorized use of expunged records, retaliatory conduct) or damages (lost W-2 employment opportunity and associated career trajectory) tied to the deactivation of a driver account. Accordingly, the employment-application claims are properly before this Court and are not *"inextricably bound up"* with those currently in arbitration. (See *Goldman v. KPMG LLP* (2009) 173 Cal.App.4th 209, 214 ["The sine qua non for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause"].)[18]

---

[18]
https://scholar.google.com/scholar_case?case=17509898460102783074&hl=en&as_sdt=6&as_vis=1&oi=scholarr

Certain evidence, on the other hand, *is* inextricably bound across both matters, and substantial discovery overlap is anticipated.

21. Further, under Cal. Code Civ. Proc. § 1281.4[19], "if the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only." Even if the employment-application and driver-deactivation issues had originally been plead together, they would have been plainly severable and not subject to a stay within the meaning of the statute.

22. PLAINTIFF also notes that during prior correspondence, LYFT suggested that the arbitration agreement applicable to the driver matter also extends to employment-application claims. While PLAINTIFF acknowledges DEFENDANT's right to defend its interests, this representation appears to foreshadow a potential attempt to compel arbitration in bad faith where no such agreement exists. PLAINTIFF includes this information solely to provide procedural context and to reinforce that the instant claims are separate and properly before this Court.

23. Finally, the other related action, Pauley v. Toyota Motor Credit Corporation et. al. (Alameda Sup. Ct. No. 24CV091339), which was compelled to arbitration in late-spring 2025, was subsequently resolved by mutual agreement.

### iii.   *Fact Witnesses*

#### A. *FW Number One*

24. Referencing ¶17 of this pleading and based on publicly available information[20], FW 1 publicly represents herself as a *Senior Talent Partner* who "builds holistic talent experiences." Descriptions of her prior professional work experience, in her own words, are as follows:

> "… Developed global strategies to improve our pipelines and attract high-quality diverse candidates. Led initiatives to improve candidate experience and created

---

[19] https://codes.findlaw.com/ca/code-of-civil-procedure/ccp-sect-1281-4/
[20] https://www.linkedin.com/in/alina-cebotarenco/

toolkits to equip hiring teams. Built hiring process from scratch and trained hiring teams...... Provided thoughtful candidate experience from application through onboarding. I collaborated with the People team on developing the onboarding process and interview-skills training, while also creating comprehensive resource toolkits for hiring managers, interviewers, and candidates. Owned the full-cycle tech, product and business recruitment process, partnering closely with hiring managers to build strategies for sourcing, evaluating, and securing top talent...... Led the recruitment process — from sourcing talent, interviewing candidates, making job offers and negotiating compensation to onboarding. To keep the team's skills up to date, I mapped out a skills matrix and oversaw training programs to promote professional growth and development…"

FW 1 also appears to be a Romanian national residing in Toronto, Ontario, Canada. Based on information and belief, LYFT placed her in a role bearing substantial responsibility for U.S. hiring and compliance decisions, including those governed by the employment and consumer laws. This appointment raises questions regarding LYFT's diligence in assigning managerial agency to non-citizen personnel who may not be readily familiar with U.S. Federal and state regulatory regimes.

25. Consistent with the principle articulated in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 584[21] — that punitive liability may attach where "the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others" — PLAINTIFF alleges that LYFT's selection and retention of FW 1, and its delegation of compliance-sensitive responsibilities to her despite the foregoing circumstances,

---

[21] https://law.justia.com/cases/california/supreme-court/4th/21/563.html

demonstrate advance knowledge of unfitness and conscious disregard for the statutory rights of applicants such as PLAINTIFF.

### B. FW Number Two

26. As first described in ¶13 and ¶14 of this pleading, during the pendency of PLAINTIFF's app-based driver application review, LYFT placed the application on hold after receiving an erroneous background report from CHECKR. During this period, LYFT communicated with PLAINTIFF by email, instructing him to "sit tight" pending completion of its internal review. PLAINTIFF then engaged in protected activity by disputing the CHECKR report, to which CHECKR sent LYFT a notice in reference.

27. Following the CHECKR reinvestigation—which improperly reaffirmed the inaccurate and expunged criminal-history information—LYFT issued a final disposition email formally rejecting PLAINTIFF's driver application. This correspondence appeared to close the procedural "loop" in LYFT's standard adjudication workflow: (1) background report received, (2) applicant placed on hold, (3) final disposition issued.

28. On or around June 7th, 2024, CHECKR completed a subsequent reinvestigation and furnished an updated, corrected background report fully clearing PLAINTIFF of the prior inaccuracies. Despite receipt of this corrected report, LYFT sent only a second "sit tight" message and failed to issue any corresponding final-disposition or reinstatement notice. This apparent deviation (hence, manual override) from LYFT's own documented process effectively left PLAINTIFF's driver application status unresolved. It also obscured the fact that the prior adverse decision had been predicated on inaccurate and expunged information.

29. Based on information and belief, the individual responsible for this deviation ("FW 2"), who assumptively sits within LYFT's Driver Operations or Compliance division, exercised managerial agency in making the decision. FW 2 possessed authority to determine or withhold final adjudicative communications to applicants and held discretion to make ad hoc policy

decisions on behalf of the company. PLAINTIFF alleges that FW 2's intervention in the process

loop—specifically, the apparent decision to omit a closing disposition following receipt of the

corrected report—constituted an intentional act designed to conceal LYFT's prior unlawful use

of expunged records, and to mitigate potential corporate liability.

30. Furthermore, FW 2—or a parallel person most knowledgeable—may hold

information directly linking the driver-side conduct described herein with the employment-side

conduct at issue in this action.

### iv. *California Civil Rights Department Investigation*

31. PLAINTIFF has completed intake with the California Civil Rights Department

("CRD") regarding all civil rights claims. CRD's investigation is now pending.

### b. California Labor Code § 432.7 Violation

32. PLAINTIFF realleges that he was an "applicant" within its meaning under CA Labor

Code, seeking to be a LYFT "employee" within its meaning under the "ABC test"[222324].

33. PLAINTIFF further realleges that LYFT, an "employer" within its meaning under CA

Labor Code § 432.7, utilized expunged convictions as a factor in determining his fitness for

regular employment with the company as a Data Analyst.

34. By requesting, obtaining, considering, and/or using expunged/dismissed criminal

history information to reject PLAINTIFF's Data Analyst application, LYFT violated CA Labor

Code § 432.7. Furthermore, none of § 432.7's statutory exceptions apply.

35. Based on information and belief, LYFT sourced the expunged criminal records—or

---

[22] https://www.law.cornell.edu/wex/abc_test
[23] https://www.labor.ca.gov/ab5-statute/
[24] https://law.justia.com/cases/california/supreme-court/2018/s222732.html

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, DAMAGES, AND PENALTIES FOR VIOLATIONS OF (1) CALIFORNIA LABOR CODE § 432.7, (2) CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT (ICRAA), (3) CALIFORNIA UNFAIR COMPETITION LAW (UCL), (4) INVASION OF PRIVACY, AND (5) GROSS NEGLIGENCE (DEMAND FOR JURY TRIAL) - 11

information derived therefrom—from another department within its corporate structure, as PLAINTIFF never authorized a background check in conjunction with his Data Analyst application. Such conduct would be *per se* unlawful across statutes, if proven. In the course of rejecting PLAINTIFF's employment application, PLAINTIFF further alleges that DEFENDANT concealed its reliance on the unlawfully considered expunged information. Given the temporal proximity between PLAINTIFF's protected background-dispute activity with CHECKR, and LYFT's subsequent rejection of his driver application – explicitly referencing the same expunged records, DEFENDANT's actions regarding the employment application appear both retaliatory and *intentional* within its meaning under CA Labor Code § 432.7(c).

36. As a direct and proximate result of LYFT's violations, PLAINTIFF suffered economic harm, including the lost employment opportunity, lost wages and benefits, loss of career advancement, as well as non-economic harm including humiliation, emotional distress, and loss of dignity.

37. PLAINTIFF seeks injunctive and declaratory relief requiring LYFT to: (a) cease use of prohibited criminal history information; (b) correct and purge any records reflecting unlawful consideration of such information; (c) implement compliant policies, training, and auditing; and (d) provide notice of corrective action.

38. PLAINTIFF also seeks treble actual damages together with costs of suit. PLAINTIFF further seeks pre- and post-judgment interest as permitted by law, and such other and further relief as the Court deems just and proper.

**c.   California Investigative Consumer Reporting Agencies Act Violations ("ICRAA")**

39. At all times relevant herein, LYFT was a "person" using "investigative consumer reports" for "employment purposes" within their respective meanings under Cal. Civ. Code §§ 1786.2(a), (c), and (f). LYFT obtained, reviewed, and used investigative consumer report information regarding PLAINTIFF for employment purposes in connection with his Data

Analyst application. PLAINTIFF was and is a "consumer" protected under Cal. Civ. Code § 1786.2(b), whose personal and employment history information was collected, evaluated, and used by LYFT in connection with an employment decision. Accordingly, LYFT was obligated to comply with all disclosure, authorization, and notice requirements set forth under the ICRAA prior to taking any adverse employment action based in whole or in part on such report.

40. LYFT willfully violated the Investigative Consumer Reporting Agencies Act by (a) procuring or causing a report to be made without a permissible purpose, (b) failing to certify to CHECKR that they have made the applicable disclosures to the consumer as required by the subdivision and that they will comply with subdivision b, (c) failing to provide a copy of the report to the subject of the investigation, (d) failing to provide the consumer a means by which the consumer may indicate on a written form, by means of a box to check, that the consumer wishes to receive a copy of any report that is prepared, and (e) acting willfully and in conscious disregard of PLAINTIFF's statutory rights. Cal. Civ. Code §§ 1786.16(a)(2)(A and C(4 and 5), 1786.16(b)(1), § 1786.50.

41. PLAINTIFF properly pleads these ICRAA claims before this Court, as the claims asserted are not duplicative of the FCRA claims pled herein. Cal. Civ. Code § 1786.52.

42. As a direct and proximate result of LYFT's violations of the ICRAA, PLAINTIFF suffered loss of an employment opportunity, lost wages and benefits, emotional distress, reputational harm, and deprivation of his statutory right to receive accurate, timely, and lawful disclosures and notices prior to adverse action.

43. PLAINTIFF seeks all available remedies under Cal. Civ. Code § 1786.50 et seq., including actual damages, punitive damages, together with the costs of suit, injunctive and declaratory relief prohibiting LYFT from continuing such unlawful practices, and any other relief the Court deems just and proper.

### d. Unfair Business Practices (Bus. & Prof. Code §17200 et seq.)

44. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

45. PLAINTIFF alleges that here, LYFT has engaged in unlawful, unfair, and fraudulent business acts or practices within the meaning of the Unfair Competition Law ("UCL"), Bus. & Prof. Code §17200 et seq.

46. LYFT's conduct was "unlawful" because it violated, inter alia, Cal. Labor Code §432.7, multiple provisions of the ICRAA, together with related regulations and public policy protecting applicants from discriminatory or improper criminal-history use. Each statutory violation is a predicate "unlawful" act under the UCL.

47. LYFT's conduct is "unfair" because, among other things, it (a) coordinated or cross-used driver-program criminal-history information to dispose of PLAINTIFF's W-2 application; (b) failed to provide mandatory disclosures/authorizations or a meaningful opportunity to dispute before adverse action; (c) deployed product and process designs that obscure applicants' rights and tilt the playing field (e.g. impermissible click-wrap agreements); and (d) engaged in grossly negligent hiring practices that foreseeably undermined their regulatory and compliance responsibilities. The harm to applicants (including PLAINTIFF) is substantial, not outweighed by countervailing benefits, and could have been avoided by feasible, compliant practices.

48. LYFT's acts and omissions were "fraudulent" in that they were likely to deceive reasonable applicants, including by suggesting compliant handling of background information while omitting material facts about how such information would actually be used to deny employment in contravention of several regulatory and compliance regimes.

49. As a result of the foregoing, PLAINTIFF suffered economic injury "as a result of"

LYFT's unfair competition, including but not limited to out-of-pocket costs (time, postage/communications, document procurement), and loss of money and opportunity flowing from the denial of employment and the corrective efforts required to contest LYFT's practices.

50. Under Bus. & Prof. Code §17203, PLAINTIFF seeks injunctive relief prohibiting LYFT from using expunged records in employment decisions; requiring compliant ICRAA disclosures/authorizations and pre/post-adverse action procedures. PLAINTIFF also seeks pre- and post-judgment interest, together with costs of suit. Nothing herein seeks non-restitutionary damages under the UCL.

### e. Invasion of Privacy

51. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

52. LYFT intentionally intruded into PLAINTIFF's legally protected privacy by obtaining and using an investigative consumer report containing expunged criminal information without authorization. PLAINTIFF had a reasonable expectation of privacy regarding this information, and LYFT's intrusion would be highly offensive to a reasonable person. Therefore, LYFT's actions constituted an unlawful intrusion upon PLAINTIFF's seclusion and a serious violation of his right to privacy under Article I, Section 1 of the California Constitution.

53. As a direct and proximate result of LYFT's invasion of privacy, PLAINTIFF suffered loss of an employment opportunity, lost wages and benefits, emotional distress, reputational harm, humiliation, discrimination, and anxiety.

54. PLAINTIFF seeks all available remedies arising from LYFT's invasion of his privacy, including actual and compensatory damages, general damages for emotional distress, humiliation, and mental anguish, punitive and exemplary damages to deter and punish willful misconduct, injunctive and declaratory relief to prevent further violations, costs of suit, pre- and post-judgment interest, and any additional relief the Court deems just and proper.

**f.   Gross Negligence**

55. LYFT owed PLAINTIFF a duty to exercise reasonable care in collecting, using, storing, and relying upon criminal-history information; to comply with Labor Code § 432.7, the FEHA, FCA, the ICRAA, UCL, and common law; to refrain from using expunged/sealed records; to segregate driver-screening data from regular employment hiring decisions; to obtain any required written authorizations for employment-purpose reports; and to provide required pre- and post-adverse action notices; to refrain from unlawful discrimination against protect classes.

56. LYFT breached those duties by acting in a manner constituting an extreme departure from ordinary care, including: (a) using expunged and sealed criminal history information to decide PLAINTIFF's Data Analyst application; (b) cross-using driver-screening data for an unrelated employment purpose without proper authorization or required notices; (c) ignoring or unreasonably delaying reinvestigation and dispute responses; (d) failing to implement or enforce reasonable procedures, training, and supervision to prevent such misuse; (e) issuing a tailored rejection contrary to its own stated process; (f) discriminating against PLAINTIFF based on inaccurate or unlawful information; and (g) recklessly hiring and entrusting international personnel who were foreseeably unfamiliar with United States federal and state regulatory requirements, etc.

57. As a direct and proximate result of LYFT's gross negligence, PLAINTIFF suffered harm including loss of employment opportunity and earnings, emotional distress, and other consequential damages in an amount to be proven at hearing.

58. PLAINTIFF seeks all recoverable special and general damages, punitive damages, together with the costs of suit, and any other relief the Court deems just and proper.

**g.   Punitive Damages**

59. PLAINTIFF is informed and believes, and thereon realleges, that the misconduct

described herein, was carried out with malice, fraud, and oppression within the meaning of Civil Code § 3294. One or more managing agents of LYFT (e.g. FW 1, FW 2 …. FW n, and potentially others) possessed advanced knowledge of, ratified, or personally participated in the wrongful conduct.

60. PLAINTIFF further alleges that discovery is likely to reveal additional "me-too" evidence—other applicants and drivers subjected to similar unlawful background-check practices and discrimination—supporting a pattern of willful disregard for statutory rights.

61. Also, given this Court's prior agreement with PLAINTIFF—ruling a recent version of LYFT's web-based clickthrough wrap sign-up agreement impermissible—PLAINTIFF alleges that the design of that agreement was fraudulent and malicious, deliberately structured to obscure substantive protections afforded under state and federal law. The architecture and user-interface flow of the wrap were not accidental but reflect intentional concealment and manipulation, potentially evidenced in LYFT's internal UX research notes, design briefs, and contemporaneous communications among the legal, compliance, and product teams responsible for implementing the sign-up process. Such conduct demonstrates LYFT's pattern of deceptive contracting practices designed to suppress employee and consumer awareness of their rights and to evade judicial scrutiny through procedural misdirection.

62. Under Civil Code § 3295(c)[25] and the standards articulated in *Jabro v. Superior Court* (2002) 95 Cal.App.4th 754[26] and *Guardado v. Superior Court* (2008) 163 Cal.App.4th 91[27], there exists a substantial probability that PLAINTIFF will prevail on his claim for punitive

---

[25] https://codes.findlaw.com/ca/civil-code/civ-sect-3295/
[26] https://law.justia.com/cases/california/court-of-appeal/4th/95/754.html
[27] https://www.resolvingdiscoverydisputes.com/wp-content/uploads/sites/95/2012/06/Guardado-v.-Superior-Court-2008-163-Cal.App_.4th.pdf

damages once evidence of this pattern is developed. Accordingly, PLAINTIFF reserves the right to seek leave for financial-condition discovery at the appropriate stage of litigation.

63. Notwithstanding, PLAINTIFF seeks an award of punitive damages to punish and deter DEFENDANT and others from engaging in similar unlawful conduct in the future.

**h.  Class Action**

64. This action involves questions of common and general interest within the meaning of CCP § 382[28]. The unlawful and fraudulent practices alleged herein—including LYFT's procurement, handling, and use of consumer and investigative reports, its concealment of substantive applicant protections, its use of procedurally unconscionable electronic agreements, violations of civil rights, discrimination, and other unfair business practices—have affected, and continue to affect, a large and identifiable group of individuals who applied for employment and/or performed work through LYFT's platforms in California.

65. The parties aggrieved by such conduct are sufficiently numerous that joinder of all affected persons would be impracticable. Common issues predominate regarding LYFT's standardized background-check procedures, recruitment and onboarding systems, form contractual terms, and uniform employment and consumer-screening policies. Plaintiff's claims are typical of the class, and Plaintiff will fairly and adequately represent their interests.

66. Accordingly, Plaintiff alleges that class treatment may be appropriate pursuant to CCP § 382 and expressly reserves the right to seek class certification at the appropriate stage of these proceedings, following discovery sufficient to define the class and any subclasses and to establish the requisite elements of numerosity, commonality, typicality, and adequacy of representation.

---

[28] https://codes.findlaw.com/ca/code-of-civil-procedure/ccp-sect-382/

## II.    CAUSES OF ACTION

**1st Cause of Action – Violation of Cal. Labor Code § 432.7**

67. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

68. DEFENDANT intentionally violated Cal. Labor Code § 432.7 by unlawfully procuring and utilizing PLAINTIFF's dismissed and expunged criminal records as a factor in determining any condition of employment.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

**2nd Cause of Action – ICRAA/CIV § 1786.16(a)(2)(A) – Procuring a Report Without Permissible Purpose**

69. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

70. DEFENDANT willfully violated the ICRAA by procuring or causing a report to be made without a permissible purpose.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

**3rd Cause of Action – ICRAA/CIV § 1786.16(a)(C)(4) – Failure to Certify with CRA**

71. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72. DEFENDANT willfully violated the ICRAA by failing to certify to CHECKR that they have made the applicable disclosures to the consumer as required by the subdivision and that they will comply with subdivision b.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

**4th Cause of Action – ICRAA/CIV § 1786.16(a)(C)(5) – Failure to Provide a Copy of the Report**

73. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74. DEFENDANT willfully violated the ICRAA by failing to provide a copy of the report to the subject of the investigation.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

**5th Cause of Action – ICRAA/CIV § 1786.16(b)(1) – Failing to Provide Consumer a Means to Request a Copy of the Report**

75. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. DEFENDANT willfully violated the ICRAA by failing to provide the consumer a means by which the consumer may indicate on a written form, by means of a box to check, that the consumer wishes to receive a copy of any report that is prepared.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

**6th Cause of Action – UCL/ Bus. & Prof. Code §17200 et seq. – Unfair Business Practice**

77. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78. DEFENDANT violated the Unfair Competition Law by engaging in unfair business practices. LYFT's conduct also constitutes "unlawful" and "fraudulent" business practices within the meaning of § 17200, as it violated multiple statutes and misled applicants regarding their legal rights and the true nature of LYFT's hiring processes.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

**7th Cause of Action – Invasion of Privacy – Intrusion Upon Seclusion**

79. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

80. DEFENDANT intentionally intruded into PLAINTIFF's private affairs by obtaining and using his expunged and confidential criminal history information without authorization. PLAINTIFF had a reasonable expectation of privacy in such information, and LYFT's intrusion would be highly offensive to a reasonable person.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

**8th Cause of Action – Invasion of Privacy – Cal. Constitutional Right to Privacy (Art. I, § 1)**

81. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82. DEFENDANT's unauthorized procurement, retention, and use of PLAINTIFF's expunged and sealed criminal history constituted a serious invasion of PLAINTIFF's legally protected privacy interests under Article I, Section 1 of the California Constitution. PLAINTIFF had a reasonable expectation of privacy in this information, and LYFT's conduct was not justified by any legitimate business necessity.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

**9th Cause of Action – Gross Negligence**

83. PLAINTIFF realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

84. DEFENDANT owed PLAINTIFF a duty to exercise reasonable care in the procurement, use, and handling of consumer and investigative reports, in the protection of PLAINTIFF's civil rights and statutory privacy interests, and in the training, supervision, and hiring of personnel responsible for compliance with federal and state employment laws.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, DAMAGES, AND PENALTIES FOR VIOLATIONS OF (1) CALIFORNIA LABOR CODE § 432.7, (2) CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT (ICRAA), (3) CALIFORNIA UNFAIR COMPETITION LAW (UCL), (4) INVASION OF PRIVACY, AND (5) GROSS NEGLIGENCE (DEMAND FOR JURY TRIAL) - 21

DEFENDANT breached those duties through extreme and reckless departures from ordinary care and is therefore liable.

WHEREFORE, PLAINTIFF prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for the following relief:

1. Actual damages (Special damages and General damages).

2. Punitive damages/Exemplary damages.

3. Treble Damages.

4. The maximum statutory fines.

5. Costs and Attorney's fees (where and if applicable).

6. Injunctive and declaratory relief.

7. Pre and post judgment interest to the extent permitted by law.

8. For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a trial by jury on all issues so triable, pursuant to Article 1, Section 16 of the California Constitution and Cal. Code of Civ. Proc. § 631.


PLAINTIFF, Jordan Matthew Pauley, Pro Per

Date: 12/1/2025